### BLACKWELL v. McNINCH.

1. APPEAL—NOTE.—Action on unsecured note is one of law, and find-
ings by master and Circuit Judge on reference by consent, cannot
be reviewed on appeal.
2. IBID.—USURY.—Point that usury statute does not apply because re-
pealed, not considered, because not made below.
3. MORTGAGE—PERSONAL SERVICES.—FINDING OF FACT that mortgage
debt had been paid in full by personal services rendered, under
agreement, reversed.

Before BUCHANAN, J., Greenwood, November term,
1902.   Modified.

Action by Thomas R. Blackwell against James R. Mc-
Ninch.   From Circuit decree, plaintiff appeals.

*Mr. Wm. N. Graydon,* for appellant, cites: *Usury is a
penalty, and law having been repealed, penalty fails:* 28 S.
C., 1; 30 S. C., 105; 2 Rich., 428; End. on Int. of Stat.,
secs. 479, 480; 108 U. S., 143; 11 Am. Dec., 777; 62 S. C.,
177.

*Mr.*                    contra, cites: *Rules as to reversing
finding of fact:* 37 S. C., 43; 45 S. C., 508; 55 S. C., 199;
16 S. C., 632; 19 S. C., 66; 26 S. C., 280.   *Finding in a law
case will not be reviewed:* 26 S. C., 305.   *As to form of
decree:* Code of Proc., 1902, 289; 41 S. C., 304.   *As to*

*invoking statute of limitations against counter-claim without pleading:* 56 S. C., 313.

December 1, 1903.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    This is an appeal from a decree of the Circuit Court affirming the report of the master, to whom all issues of law and fact had been referred.    The master's report was as follows:

"This is an action to foreclose a mortgage and a suit on two unsecured notes.    It appears that on the 21st day of November, 1889, one John I. McGhee held a mortgage over certain lands of defendant to secure the sum of $1,440, evidenced by three notes bearing interest at seven per cent. On these papers were indorsed two payments amounting together to $105.35.    It seems after a calculation was made, John I. McGhee agreed with James R. McNinch, the mortgagor and defendant herein, to take $500 for the debt. James R. McNinch, not having all the money with which to take up the mortgage, had Thomas R. Blackwell, the plaintiff, to advance a part of it.    It is alleged in the complaint that the plaintiff, at the request of the defendant, advanced $462 and the defendant $38, and the papers were assigned to the plaintiff by John I. McGhee.    It is further alleged in the complaint, that in order to show the amount paid by the plaintiff and to show the amount of interest agreed to be paid by the defendant, the said James R. McNinch, executed and delivered to the plaintiff his note for $462, payable one year after date, with interest from maturity at ten per cent. per annum.    The defendant admits the execution of this note and the payment thereon of $121.74 on November 11, 1893, but denies the payment of $10, October 27, 1898; alleges that the plaintiff advanced only $420, and he, the defendant, advanced $80, and pleads usury.    For a further defense, the defendant says that on account of and by reason of certain services he rendered the plaintiff at the request of the plaintiff and by an agreement with the plaintiff, the said

debt had been fully paid, and the defendant pleads the same in satisfaction and payment thereof.

"As to the two $165 notes sued on. The defendant admits the execution of both notes; alleges that he received only $150 on each, that $15 in each was usurious interest added, pleads payment and usury, and sets up a counter-claim for $60 excess interest.

"From a careful consideration of the testimony, I find as matters of fact:

"1st. That of the $500 paid John I. McGhee for the assignment of the mortgage herein sued on, Thomas R. Blackwell, the plaintiff, advanced $420 and the defendant, James R. McNinch, $80. Mr. and Mrs. McNinch both swear that McNinch advanced $80 of this $500 and Blackwell advanced $420. The interest on $420 for one year at ten per cent. is $42, and $42 added to $420 makes $462, the principal of the note sued on, and which does not bear interest until after maturity, a year from the date. Whether Mr. Blackwell advanced $420 or $462, the plea of usury fails, since ten per cent. was legal at the time, whether interest was collected before or after maturity.

"Now as to the other defense, to wit: The services the defendant claims paid this debt. The testimony shows that the defendant moved on the plaintiff's plantation in 1887 and lived there until 1900. He lived there as a renter a part of the time and as a cropper a part. The plaintiff's place was a nine or ten horse farm. In 1887 the plaintiff moved off his place to Due West, and had the defendant move in the house vacated by himself. The defendant was subsequently put in charge of the whole place as overseer or keeper, and rendered valuable service to Mr. Blackwell, the plaintiff, in keeping up the plantation, by ditching, terracing and repairing and building houses, for which Mr. Blackwell was to compensate him; and that Mr. Blackwell, in 1894, upon the defendant offering to pay him money on this mortgage debt, refused to accept the money, and told the defendant that if he would remain on the place and

continue to render service for the unexpired term of ten years, he would surrender him the mortgage marked satisfied, in consideration of his services. The preponderance of the testimony, to my mind, establishes the fact that John R. McNinch rendered these services alleged to have been rendered the plaintiff, and that the plaintiff agreed with the defendant to accept these services in payment of the mortgage debt, and I so find.

"As to the note for $165, dated January 30, 1894, I find from the testimony that it had been paid. That the said note was usurious, in that the original debt was .$150, and $15 as interest for one year was added as interest on $150. This note was given for money and supplies to be advanced, but being included in the 1894 account of Blackwell against McNinch, which account appears to have been settled by compromise, I cannot find that the $15 interest was paid as interest, hence the counter-claim as to this note is disallowed. ·

"As for the $165 note of April 3, 1896, I find, as a matter of fact, from a careful consideration of the testimony and a comparison of the papers offered in evidence, that this note has been fully paid, and the said note was usurious, in that $15 was added as interest for less than a year's time on $150. The counter-claim to this note is sustained for twice the difference in interest at eight per cent. and ten per cent., to wit: in the sum of $6.

"Upon the foregoing findings I conclude, as matter of law: 1. That the complaint herein be dismissed, with costs. 2. That the defendant have judgment against the plaintiff for $6. 3. That the mortgage herein sued on be delivered up and marked satisfied of record."

The exceptions relate merely to the findings of fact. With respect to the unsecured notes of $165 each, we regard the conclusion of the Circuit Court as final. The action, in so far as it relates to these notes, is one at law, and no equitable defense is involved. The plaintiff having waived trial by jury, is bound by the determination of the facts by the Circuit Court, and this Court

has no power to review such findings of fact in an action at law.

We have not considered the point presented in argument by appellant's counsel, that as to these notes, which were executed prior to March 2, 1898, the usury law was repealed under sec. 1664, Code 1902, act of 1898, 22 Stat., 749, for the reason that it does not appear that such question was raised before or considered by the Circuit Court, nor is there any exception specifically raising such question.

With respect to the foreclosure of the mortgage, the action is equitable, and this Court may reverse the findings of fact therein if such findings are against the preponderance of the evidence. A careful consideration of the testimony leads us to the conclusion that the Circuit Court was in error in dismissing the complaint in foreclosure upon the ground stated, that defendant rendered services to plaintiff, and that plaintiff agreed with defendant to accept these services in payment of the mortgage debt. The complaint thus alleges the agreement in question: "That in November, 1893, upon the occasion of making the payment of $121.74, mentioned in paragraph 5 of the complaint, the plaintiff promised and agreed with defendant that if he would continue in the performance of the services hereinabove mentioned until ten years had elapsed from the time when defendant moved on the lands, as herein stated, that plaintiff would satisfy in full the indebtedness of defendant to plaintiff, evidenced by the papers set out in paragraph 4 of the complaint, and the same cancel and deliver to this defendant."

The only testimony offered to establish this alleged agreement was by the defendant alone, who testified as follows: "In 1894, I offered to pay Mr. Blackwell money on the land, and he refused to take it, saying that I had helped him four years, and if I made out the ten years, he would give me up the mortgage. He said he would pay me if I would go ahead and help him out. I had worked five or six years

35—67

when he promised to give me the mortgage. I had worked on and kept up the place for a little over four years." The defendant further testified that his services were worth $400 for the whole time he was on plaintiff's place, if we limit the time of his services to ten years. According to defendant's estimate, his services were worth $40 per year. It does not appear at what time in 1894 this alleged agreement was made; but after crediting the mortgage on November 11th, 1893, with the payment of $121.74, the annual interest of the balance of the debt exceeded the annual value of the services. A very improbable contract, to say the least of it. The plaintiff testifies: "In 1894 I never offered to give the mortgage to McNinch for services. Never did make any such contract with him."

Remembering that the burden of proof rested upon the defendant to establish the alleged agreement, and in view of the unreasonableness of such a contract, we do not think it could fairly be well said that the preponderance of the evidence was against the plaintiff, an unimpeached witness, who positively denied having made any such contract. But there is a strong circumstance in the case which corroborates the plaintiff and is wholly inconsistent with the defendant's version. It appears that in 1899, the plaintiff assigned this mortgage to a Mr. Todd as collateral security, after procuring from defendant the receipt of $121.74 for payment of November 11, 1893, for the purpose of placing upon the mortgage all proper credits, in accordance with the demand of Mr. Todd. The defendant thus testifies as to this circumstance: "In 1899, in February, Mr. Blackwell came down to my house for the $121.74 receipt; said he wanted to credit it on the mortgage, so he could use the mortgage with Mr. Todd. I asked him what Todd was doing with my papers. He said he was going to place the paper with Todd as collateral security.. He wanted money, and Todd would not take it without all credits being put on it. He (Mr. Blackwell) never said I was not entitled to the mortgage. When he asked me for the receipt, I asked him what

business Todd had with my papers, and he asked if I would not loan him $500. He said he would not let me suffer, and I gave him the receipt the next morning." The defendant further testified: "When Mr. Blackwell came for the receipt I never forbade to pledge the mortgage to Mr. Todd, but I told Blackwell it was my mortgage, I never told Mr. Todd the mortgage was paid." With reference to this matter, the plaintiff testified: "When I called on McNinch for the $121.74 receipt, he did not hesitate to give it to me. He never laid any claim to the mortgage." The fact that the defendant aided plaintiff in 1899 in placing all proper credits upon the mortgage with a view to enable him to assign it as collateral to a third person, is wholly inconsistent with the idea that the mortgage was then paid by the services rendered.

We have not considered in this connection the statute of frauds, which forbids action upon any agreement that is not to be performed within one year, unless the agreement be in writing and signed by the party to be charged therewith, as no question has been raised with reference to said statute.

The Circuit Court, therefore, erred in holding that the mortgage was paid by the services alleged to have been rendered under such an agreement, and in dismissing the complaint. Subject to what we shall hereafter direct, the plaintiff was entitled to a decree of foreclosure for the sum of $462, with interest from November 21, 1890, as stipulated, less credit of $121.74, November 11, 1893, and the credit of $10, October 27, 1898, admitted by plaintiff, although denied by defendant, and less also the amount of $6, allowed as a counter-claim by the master and Circuit Court in the action on the unsecured notes.

Equity requires that the mortgage debt should be credited or reduced by whatever amount plaintiff is justly liable to pay defendant for services rendered. But as neither the master nor the Circuit Court has made any findings as to the value of such services and plaintiff's liability to pay therefor, independent of the alleged special agreement,

which defendant failed to establish, we are not prepared to finally dispose of the case, and will remand it for an inquiry into those matters.

The judgment of the Circuit Court, in so far as it relates to the unsecured two notes of $165 each, is affirmed; but in so far as it relates to the foreclosure of the mortgage, it is reversed, and the case is remanded for such further proceedings as may be proper to carry out the views herein announced.